## COMMERCIAL BANK *v.* WILLIAM C. AUZE ET AL.

1. CONTRACTS.  *Conflict of laws.   Lex loci contractus.   Lex solutionis.*

    The law for the construction and enforcement of contracts made in
    one state to be performed in another, is accurately and clearly
    stated in the case of *Brown Brothers* v. *Freeland & Murdock*, 34 Miss.,
    181, and the syllabus to that case is commended.

2. USURY.   *Code of* 1880, ¿ 1141.   *Code of* 1892, ¿ 2348.

    Under the code of 1880, § 1141, if a lender stipulated for interest in
    excess of ten per centum, the contract was usurious and all inter-
    est was forfeited.   The code of 1892, ¿ 2348, did not substantially
    change the law, by the provision that all interest shall be forfeited
    if the lender stipulates for or receives interest in excess of such
    rate; and so far as concerns the right of the lender to sue for and
    recover usurious interest paid, where the same was stipulated for
    in this state, the codes are substantially the same.

3. SAME.   *Penalty.   Statute of limitations.   Code* 1892, ¿ 2741.

    A suit for the recovery of interest paid upon a usurious contract, is
    not for the recovery of a penalty *eo nomine* within the statute
    (code 1892, ¿ 2741), and is not barred thereby.

4. SAME.   *Appropriation of payments.*

    Before such a suit can be maintained, the borrower must extinguish
    the principal debt due the lender, and payments will be applied to
    such debt until it is satisfied.

5. SAME.   *Security of loan.   Mortgage on lands in another state.*

    The execution of a mortgage on lands in another state, to secure a
    loan made in this state, does not make the contract one to be gov-
    erned by the interest laws of such other state.

FROM the circuit court of Lincoln county.

HON. ROBERT POWELL, Judge.

The facts are sufficiently stated in the opinion.

*Cassedy & Cassedy, Chrisman & Brennan,* and *J. B. Chrisman,* for appellant.

1. The action is based on § 2348 of the code of 1892, which did not take effect until November 1, 1892, and the contracts by and upon which it is claimed usurious interest was stipulated and received, were made respectively, January 27 and June 18, 1892. The suit is for all interest paid, both lawful and usurious. Under the law in force at the time of the contract, only the excess over the lawful interest could be recovered. Sec. 1141, code of 1880; *Dickerson* v. *Thomas,* 67 Miss., 777. The statute is penal, and should be strictly construed. Statutes are never given a retrospective operation if any other construction can be given them. *Planter's Bank* v. *Snodgrass,* 4 How. (Miss.), 621; Wade on Retroactive Laws, secs. 34–36; *Hooker* v. *Hooker,* 10 Smed. & M., 599; *Garrett* v. *Beaumont,* 24 Miss., 377; *Carson* v. *Carson,* 40 Miss., 349; Black on Interpretation of Laws, 259; Tyler on Usury, 374.

2. The money sought to be recovered back was received in Louisiana, it being part of the payment mentioned in the declaration as made December 1, 1894 ($3,194.50), the payments previously made not being sufficient to extinguish the principal, and to its payment the law would first apply them. *McBroom* v. *Scottish Mtg. & Land Investment Co.,* 153 U. S., 318. No action, therefore, accrued to the plaintiffs in this state, and the statute will not be given an extraterritorial operation. Black on Interpretation of Laws, 91.

3. The evidence of Auze, showing what was said and done by and between the parties, notwithstanding his unqualified declaration that the contract was made in this state, establishes beyond controversy that it was made in Louisiana. What, according to his version, was said in Brookhaven between himself and Becker, the cashier of the bank, prior to the execution of the notes and mortgages, was mere negotiation, a simple application for a loan, and a proposition to secure it by a mortgage on lands in Louisiana. If nothing more had occurred, it

will hardly be claimed that the appellees could have had specific performance on bill filed for that purpose, tendering to execute the security, or a recovery at law for a breach of the contract. The contract would date from the place of acceptance, and would be governed, as to its validity, by the law of that place. 3 Am. & Eng. Enc. L., 852–857; 13 Am. Dec., 281; 99 Am. Dec., 663 and note.

The rights of parties to a promissory note is determined by the law of the place where it is delivered.    4 Dallas (U. S.), 60.

The proposition of Auze that the bank should make him a loan, and he to secure it by a mortgage on lands in Louisiana, was accepted by Brennan, the agent of the bank, and the notes and mortgages executed and delivered in Louisiana, and the obligation of the bank to advance the money dates from this time.    From that moment, for the first time, a contract existed between the parties, valid by the law of the place, and susceptible of being specifically enforced by either party.    The money borrowed was for the use of Mrs. Auze, secured by mortgage on her property in Louisiana; the debt was her debt. Her power to contract it, and mortgage her lands to secure it, were granted, on her application, by the courts of that state. She had no power, under the laws of her residence, to make the contract until it was authorized by the proceedings for that purpose, and these proceedings were had, and the respective notes and mortgages were executed and delivered at the same time and place.    Being a resident of Louisiana, and the lands with reference to which she contracted being situated there, she could not, by reason of her marital disability, have made such a contract in this state, and this ought to be conclusive as to the place of the contract.

The instructions given for the plaintiff are clearly erroneous in authorizing a recovery for all interest paid.    They should have limited the recovery to the excess only, as under the code of 1880, rather than authorizing a recovery under the code of 1892.    The two code provisions are materially different, § 1141

of the code of 1880 providing "that if a greater rate of interest than ten per cent. shall be stipulated for in any case, all interest shall be forfeited;" § 2348 of the code of 1892 that, "if a greater rate of interest than ten per cent. shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory."

In support of the proposition declaring the right to contract with reference to the laws of another state touching the subject of usury, we cite the following authorities, relying confidently upon them to demonstrate the error of the court in refusing the instructions on that subject: *Brown Bros.* v. *Freeland & Murdock,* 34 Miss., 181; Tiedeman on Com. Paper, sec. 511; 23 Am. St. Rep. (79 Tex., 246), 332, and Bkte, 340; 32 Am. St. Rep. (83 Iowa, 120), 294; 48 Am. St. Rep. (90 Iowa, 300), 442, and note 446; 47 Am. St. Rep. (116 N. C., 882), 841; 88 U. S., 241; 31 Am. Dec., 264; 88 Ga., 756; 15 S. E. Rep., 812; 48 N. W. Rep., 638; 58 Hun (N. Y.), 608; *Sturdevant* v. *Memphis National Bank,* 9 U. S. C. C. App., 256.

Our contention on this branch of the case is, in short, that the parties, being residents of different states, had a right to contract either in Mississippi or Louisiana as to the rate of interest with reference to the laws of either state; that, in the absence of proof as to the law with reference to which the parties contracted, the presumption is that the contract was made with reference to the laws of that state where the rate of interest stipulated for was lawful rather than the one where it was unlawful; and that the notes, mortgages, court proceedings, and the facts surrounding the transaction, as disclosed by the evidence, leave no room for doubt that the parties actually did contract, as to the rate of interest, with reference to the law of Louisiana, and that, having done so, the case made is not one where the penalties of the Mississippi statute can be imposed or is at all applicable.

*R. H. Thompson*, for appellees.

The third plea was demurred to, and the demurrer sustained. The plea was to the first payments, aggregating $1,252.77, and it averred that the plaintiffs could not recover on account of them, because they were made more than one year before the beginning of the suit. The demurrer to this plea speaks for itself. The plea was to the whole declaration, and set up only a partial, if any, defense. The suit was not for the recovery of the specific payments mentioned in the plea; these payments went to pay the sum actually borrowed, and suit could not have been brought for anything until the whole money borrowed, without interest, was repaid. This is shown not to have been done until within a year before suit brought.

"In accordance with the rule that payments made to the creditor will be applied to the valid part of the debt, it has been held that so long as the whole amount paid does not exceed the debt and lawful interest, the debtor cannot maintain an action to recover back." 27 Am. & Eng. Enc. L., 961. Of course, this is said, so far as lawful interest is concerned, as to the law of a forum where only excessive interest can be recovered. The rule is equally applicable where all interest can be recovered. *Josey* v. *Davis* (Ark.), 18 S. W. Rep., 185; *Hawkins* v. *Welch*, 8 Mo., 490; Tyler on Usury, 421 *et seq.*

It is also submitted that this action is not for "a penalty or forfeiture on any penal statute" within the meaning of § 2741, code 1892, and that the one year statute of limitations has no application. While the usury law, § 2348, code of 1892, may be in one sense penal, yet, in a broader and truer sense, it is remedial. In so far as it gives a right of action to sue, it is purely remedial. Even statutes authorizing an action to be brought to recover usury paid within a limited time are regarded as cumulative, and not as prohibiting the common law action at any time within which such action may be brought. 27 Am. & Eng. Enc. L., 962, and authorities cited.

It must be borne in mind, in the consideration of this case,

and especially of the fourth plea, that every loan and borrowing of money embraces two contracts—(1) the lender's contract, by which he agrees to advance the money upon the terms stipulated. This contract is rarely in writing; and (2) the borrower's contract, by which he obliges himself to repay the debt. This, the borrower's contract, is most frequently in writing, and is evidenced by the promissory notes given to the lender. It is the first, the lender's contract, which is condemned by statute, when a greater rate of interest is stipulated for than ten per cent. The one contract is not necessarily made at the same place with the other. The agreement to loan by a banking corporation, like appellant, is usually made at its banking house; the notes which evidence the borrower's obligations to repay, may be executed elsewhere, and are frequently so executed.

In the case of *Martin* v. *Johnson*, 8 Lawyers' Reports Annotated, 170, decided March 1, 1890, the supreme court of Georgia says: "The contract of lending and borrowing always includes two agreements—one by the lender to deliver the money, and the other by the borrower to repay it. As the pleas do not allege that the agreement to deliver the money was to be performed elsewhere, the place of delivery was Georgia. It was in the performance of this agreement that the usury was reserved. The whole amount of the money was deducted from the money delivered, and this was done in Georgia. The taint of usury does not result from payment, but from the agreement, performed or unperformed," etc. Is usury, received in Mississippi by deducting it from the loan, less usury because the note for its repayment is executed elsewhere?

Of course, it is of no consequence that the parties did not intend to violate the law. The question is, did they intend to do the act which was a violation of the statute; did they intend to stipulate for a greater rate of interest than ten per cent.? If so, then the law was violated. Even if both parties had mistakenly believed that the legal rate of interest in the state was twenty per cent., yet, if they stipulated for a rate exceeding

ten per cent., the consequence of the statute would be upon them. *Ignorantia juris non excusat.* A mistake of fact—as, a miscalculation or any inadvertence, may, it is true, be excused. Such are the cases noted in the annotations under § 2348, code of 1892. The averment of the fourth plea that the contract as regards interest was made with reference to the laws of Louisiana, where plaintiff resided, does not help the plea. It is true that where a contract is made in one state, to be performed in another, the law of either place may be adopted. But that is not this case. According to the declaration and the plea, the contract for interest was made in this state, and was to be performed here; even the notes were payable at Brookhaven, Miss. If a citizen of another state comes into Mississippi and makes a contract to be performed here, it is, to all intents and purposes, a Mississippi contract. The averment of the plea that the notes were executed in Louisiana, confuses the contract for which suit is brought (the lender's contract to advance the money), with the obligation of the borrower to repay, and, under the Georgia case, *supra*, does not help the plea. The demurrer was properly sustained, as is believed. But, if I be mistaken in this, appellant had the full advantage of everything averred in the plea under the notice filed with the general issue, and the evidence presented all of said matters to the jury, and they were found by it to be untrue. The taking of mortgages on lands in Louisiana did not govern and control as to the usury law applicable to the transaction. *American, etc., Co.* v. *Jefferson*, 69 Miss., 770; 27 Am. & Eng. Enc. L., 974, 975; Tyler on Usury.

We have in this case, to show that the loan was made and the illegal interest was stipulated for in this state, the positive evidence of the plaintiff. It could not be made stronger; and, in addition to this, it was admitted by the officers of the bank that negotiations were begun here. It is true the notes, other than the two small ones given only for usury, were executed in Louisiana, but they were made payable here, and *prima facie*

the interest laws of this state govern. The money was paid to plaintiffs on the loan in this state; $250 was sent from Brookhaven by express, and this was delivered here to the express company for plaintiffs, and, in legal effect, is the same as if handed to them here; the balance was paid upon plaintiff's checks in Brookhaven, upon presentation here to the bank. Remember, the question is, where did the bank stipulate for unlawful interest? It is the bank's (the lender's) contract, which must be located. So far as this court is concerned, this case must be decided (for there is abundant evidence supporting the verdict) as if the following facts were admitted: (1) The bank (appellant) loaned the money in this state, negotiated for its loan here; (2) the loaned money was paid or passed over to borrowers here; (3) the loan was to be repaid here, and this according to the borrower's notes, too, and it was largely repaid here. This being true, it makes no difference where the borrower's notes were executed, and none that they were secured by a mortgage on Louisiana lands.

But it is argued that Auze's testimony did not establish a binding contract, one that could have been specifically enforced before the execution of the notes and mortgages in Louisiana; therefore, it is contended what was done in Louisiana culminated the contract, and that it was imperfect before. To this there are at least two perfect answers:

1. One of fact. Auze testifies that the first note was signed in blank in Louisiana—Brennan not knowing how to fill it out —and that it was brought back to the bank by Brennan, with authority from plaintiffs for the bank to fill up the blanks. If this be true, and the jury had the right to believe it, this note was really executed in Mississippi. And it will be noticed that in reference to the second loan there was no evidence offered by the defendant disputing what the plaintiff, Auze, said about it. Defendant's evidence all related to the first loan. The only evidence relating to the second loan was that of plaintiff that

the loan was made and concluded in this state.    The note given therefor, however, is dated in Louisiana.

2. But if it be admitted that the contract of the bank could not have been specifically enforced until after the notes were made, it does not follow that the loan was made in Louisiana. Surely a contract of loan can be made in one place and the borrower's notes executed in another.    There is nothing legally or physically preventing this.    Unless the court is ready to decide that in every case of loan the contract is necessarily made where the borrower's notes are executed, there is nothing in the argument.

Again, very few contracts respecting personal property will ever be specifically enforced by a court of equity.    Such contracts must be exceptional and quite peculiar, or they will not be specifically enforced.    Such a remedy is almost exclusively confined to contracts concerning land, and in all other cases the aggrieved party can only sue for damages.    Hence, inability to specifically enforce a contract of loan is no test of its validity or criterion to determine where it was made.    But, still further, the argument proves too much if it proves anything.    No court would ever specifically enforce an usurious contract; it would not require the lender to violate the law; it would not require him to loan his money at a less rate than he had contracted to do, for this would be inequitable.    So we see the right to specific performance by the borrower cannot determine the right to recover for usury; for, if that be the test, there is no case in which a recovery can be had.

Finally, on this head, to specifically enforce a contract the defendant must be placed in default.    Take the ordinary case of a bond for title to land; before the vendor can be required to make deed, the vendee must pay or tender the purchase money.    The place of tender or payment may, and frequently is, a different one from the place the contract is executed.    The place, therefore, where the act was done which gives the right

to specific performance, does not determine where the contract sought to be enforced was made.

It is true, as shown by the authorities cited by opposing counsel, that an offer must be accepted; but it does not follow that the two, the offer and the acceptance, may not be made at different places, nor does it by any means follow that the place of the execution of the papers required by the terms of the contract, necessarily fixes the situs of the contract. In this very case the negotiations for the loans, and the loans themselves, were shown by evidence to have been made in this state, the money was passed by lender to borrower here, and it was agreed to be repaid here. The execution of the notes and mortgages required by the lender were probably had in Louisiana, but nothing else was done there.

Take a common sense view of this matter. When were the loans actually made? Certainly not until the money was passed to plaintiffs, not until the bank sent the $250 by express and paid plaintiffs' checks. And this was done in this state. The negotiations for the loans were had here, and the money was paid here to the order of the borrowers, and it was repayable here. If it be true that a contract is made where the last act is done which is necessary to render it obligatory, then, aside from the blanks in the note, the payment of the money to plaintiffs, in this state, was that act; before that the notes were not obligatory.

Much stress was laid, by appellant's attorney, upon a pretense that to maintain this suit is to give a retroactive effect to § 2348, code of 1892. The first loan was made January, 1892, and the second one in June, 1892. These were consolidated, however, and usurious interest a second time stipulated for, in April, 1893, and the third and large note then given, and the two notes, one for $145, and one for $111, wholly for usury, were executed in 1894. Section 1141, code of 1880, which was in force when the loans were made, provides: "And if a greater rate of interest that ten per cent. shall be stipulated

for in any case, all interest shall be forfeited.'' The code of 1892 provided: ''And if a greater rate of interest than ten per centum shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory.''

It will be noticed that the stipulating for excessive interest was unlawful under the code of 1880. So far as the stipulating for unlawful interest is concerned, the two codes are iden tical. The provision of the code of 1892, '' and may be recovered back,'' etc., not in code of 1880, is purely remedial. The act of ''stipulating for '' unlawful interest was just as illegal under the old code as it is under the new. So far as the receiving of unlawful interest is concerned, it was all received, in this case, after the code of 1892 had gone into effect.

But it must not be forgotten that in April, 1893, when Auze and wife could have resisted the payment of all interest had they been sued, a new stipulation for usurious interest on the very loans was made by appellants. It then took the third note, consolidating the first two, and carried not only the previous unlawful interest into it, but stipulated for even more unlawful interest. The bank, under the old code, was not legally entitled to any interest, and yet it stipulated, April, 1893, for unlawful and for compound interest.

Code of 1880, § 1141, is penal, why? Because, in the language of the case cited and relied upon by appellant's attorneys, *Planters' Bank* v. *Snodgrass*, 4 How. (Miss.), 621, ''it inflicts a loss of the entire interest, legal as well as usurious, upon the lender.'' The new provisions of the law, in relation to '' stipulating for '' unlawful interest, are purely remedial.

So, in this case, we have no new provisions of a penal nature relating to the contract, and we have besides a new contract, a new '' stipulation for '' unlawful interest after the code of 1892 became operative. But again, I will ask, why was the rule ever established, under the old law, that only excessive interest could be recovered in executed contract? Judge Sharkey tells

us (*Parchman* v. *McKinney*, 12 Smed. & M., 631–639,) that it was because of the equitable rule which would not allow a party to recover back what he had voluntarily paid without paying that which he might legally have contracted for. "It has its foundation in the discretion which the courts of equity are said to have possessed in granting or withholding relief. On this foundation, and on this only can it rest." At law "the recovery of the excess may be had in an action for money paid, which being an equitable action, courts of law apply the equitable principle, and will not allow a party to recover back what he had voluntarily paid without paying that which he might legally have contracted for."

These quotations show that the only reason why, both at law and equity, all interest could not be recovered under the old law was simply a rule of the court of equity. It was not because of any merit in a defendant or justice in his case. Legally, he was not entitled to retain any interest, but the court of equity, which was supposed to have a discretion in granting or withholding relief, impressed upon the controversy its own conceptions of what ought to have been done. Courts of law followed this rule when such cases were brought before them in an equitable action.

Surely the legislature can, even in its application to existing or pre-existing contracts, abolish a rule of court. No man has any vested rights in them. No interest was ever due to the Commercial Bank from Mr. and Mrs. Auze, while, under the code of 1880, plaintiffs could not have recovered back anything but the excessive interest, yet, the reason was not predicated of any right in the lender. There has, therefore, been no change by the statute in appellant's rights.

This case ought to be made a warning to usurers. Nothing can be truer than Lord Bacon's aphorism, which, if I remember it correctly, is in these words: "Usury bringeth the treasure of a realm or state into a few hands; for the usurer

being at certainties, and the others at uncertainties, at the end of the game most of the money will be in the box.''

WOODS, C. J., delivered the opinion of the court.

We find it unnecessary to examine, in detail, the many and complicated and voluminous pleadings of counsel, for the reason that on the issues finally joined the defenses were fairly presented by the pleas adjudged good, and all the evidence desired to be offered in support of these pleas was fully presented.

On January 27, 1892, appellees borrowed of appellant $2,174, and to this principal sum was added interest at the rate of twenty per centum per annum, for which appellees executed their note for $2,500, with interest thereon, after maturity, at eight per cent. per annum, which note became due and payable on November 1, 1892. On June 18, 1892, appellees borrowed of appellant the further sum of $1,000, and to this principal sum was added interest at the rate of twenty per cent. per annum, for which appellees executed their second note for $1,090, with interest thereon, after maturity, at the rate of eight per centum per annum, which note became due and payable on December 20, 1892. Both notes, by the terms in their faces, were payable at Brookhaven, Miss., the domicile of the appellant. Deducting some payments which had been made, there appeared to be due on both of said notes, on April 21, 1893, the sum of $3,772.27, but this sum was reached by computing interest, after the maturity of the notes, not at eight per cent., as agreed originally, but at twenty per cent. from maturity to November 1, 1893, and thereupon, on said April 21, 1893, appellees executed their third note for said sum of $3,772.27, due and payable November 1, 1893, with interest at eight per cent. per annum after maturity. This new note, like the two former ones, in lieu of which it was given, on its face was payable, likewise, at Brookhaven, Miss., the appellant's domicile.

The three foregoing notes were dated "Amite City, Louisi-

ana," and were secured by mortgages, properly executed, on lands of appellee, Mrs. Auze, in that state, she being thereunto authorized by the proper court in that state under the laws thereof.

On May 4, 1894, appellees executed their two promissory notes, payable to appellant at Brookhaven, Miss., one for $111.77, due June 4, 1894, and the other for $145.76, due July 4, 1894, and these two notes were given, as it seems, wholly for usurious interest on the original debt.

In satisfaction of all these notes, appellees paid to appellant the sum of $4,627.92, and this action was instituted to recover all interest paid, because of usury.

The principal contentions on this state of case will readily suggest themselves. Were the contracts of loan Mississippi or Louisiana contracts? Were they made in the one state or the other? and, if made in Louisiana, were they so made with reference to the laws of that state in good faith, and with no purpose to evade our laws on the subject of usury? Is the controversy determinable by the *lex loci contractus* or the *lex solutionis?* It will be remembered that the notes and mortgage executed to secure their payment were made in Louisiana, and were payable in Mississippi, as disclosed by the faces of the notes.

The law in this state on this subject has been briefly but clearly stated in the case of *Brown Bros. & Co.* v. *Freeland & Murdock,* 34 Miss., 181. The syllabus to the case, prepared by the then reporter, presents with wonderful perspicuity and precision the views of the court, and we can do no better than quote that syllabus.

" 1. A contract, as to its nature, construction and validity, is governed by the law of the place where it is entered into.

" 2. When a contract is made in one country, to be performed in another, the law presumes, in the absence of any other circumstance, that the parties contracted with reference to the place where it is to be performed; and, in that case, the

contract, as to its nature, construction and validity, will be governed by the *lex loci solutionis*. But this is a mere presumption of law, and is not inflexible; and it will not control if the attendant circumstances show that the parties contracted with reference to the law of the place where the contract was entered into.

" 3. When a contract, made in one country, to be performed in another, stipulates for the payment of a rate of interest allowable by the *lex loci contractus* but prohibited by the *lex loci solutionis*, it will be governed by the law of the place where it was entered into. For, as it was competent for the parties to contract with reference to the law of either place, it will be presumed that they contracted with reference to that law which their contract did not violate. A presumption will never be indulged that a contract is in violation of law when it is capable of any other reasonable construction."

But these presumptions of law as to execution and performance, are only, after all, presumptions, and must yield to the facts showing what the real intent and purpose of the parties was. In the present case, the conflict on this point, on the evidence, is sharp and irreconcilable. For the appellees, the evidence is that the loan was effected at Brookhaven, the money paid at Brookhaven, and was to be paid back by the borrower at Brookhaven, and that no thought of Louisiana law was in the mind of the parties, nor any word spoken about performance under Louisiana laws. In a word, the appellees' evidence is that it was a Mississippi contract with security for the notes evidencing it on lands in Louisiana. On the other hand, appellant's evidence shows that the contract was made with direct and express reference to the laws of Louisiana, and that W. C. Auze, one of the appellees, is the very person who suggested the plan adopted, by which the extortionate rate of interest might be made unobjectionable in law.

On this conflicting evidence as to the circumstances under which the contract was entered into and as to the intent and

purpose of the parties, the case went to the jury under fair instructions for appellant.    The jury was told by the fifteenth charge given at appellant's request, that if the evidence showed that the contract of loan evidenced by the three notes of January 27, 1892, June 18, 1892, and April 21, 1893, was made in the State of Louisiana, then no recovery could be had for any payments made in settlement of such loan and payment of such notes.    Surely, by this instruction, appellant received generous treatment at the hands of the court.    The instruction seems to make the legal presumption arising from the execution of the contract in Louisiana conclusive as to their intent to contract with reference to the law of that state, where the contract was legal, and that without considering whether the contract was in good faith, and with no purpose to evade our usury laws, so made in Louisiana.

The other two instructions given for appellant gave appellant the benefit of this too generous announcement as to the two small notes given solely for interest.    The danger was that the jury, under all of the appellant's charges, might have relied wholly on the presumptions of law arising from the execution of the contract in Louisiana, disregarding the circumstances of the execution of the contract and the good faith and the intent of the parties as to what state's law should govern in an attempt to enforce performance.    But of this danger the appellant cannot complain, and, on the whole law as charged by the court below, we see no reversible error.    Several of the refused charges of appellant were plainly erroneous, and if any which were correct were refused, the appellant's defense was certainly submitted fully on the charges given.

The mere verbal changes in § 2348, code of 1892. do not substantially change § 1141 of the code of 1880.    The code of 1880 declared a forfeiture of all interest in all cases where a greater rate of interest than ten per cent. was stipulated for; and the code of 1892 declares a forfeiture of all interest in all cases where a greater rate of interest was stipulated for or received.

So far, at any rate, as the right of action in appellees is concerned, the mere verbal alteration is without any force or effect, and it is a mistake to suppose that any retroactive effect need be given § 2348 of the code of 1892. The forbidden thing—the stipulating for unlawful interest—is in both codes.

It only remains to add that this suit is not for the recovery of a penalty, *eo nomine*, under § 2741, code of 1892, by which actions for penalties *eo nomine* are barred in one year. Besides, the defense on this ground was presented by a plea to the whole declaration, and set up only a partial defense, or, to speak more accurately, attempted to set up only a partial defense. The specific payments referred to in the third plea must be applied to the payment first of the money actually borrowed, and, until this money had been paid, no suit would have been maintainable for any specific lesser sums paid by appellees, and the sum of money actually borrowed had not been repaid more than a year before this action was begun.

The issues joined presented the controverted questions, and, under these issues, all the evidence desired to support the contentions of appellant was laid before the jury, and under such charges as at least fairly instructed the jury for appellant as to the legal principles applicable in the case. On the violently conflicting evidence, the jury might have found, under the instructions, for appellant; but they have not so found, and we do not feel authorized to disturb their finding.

*Affirmed.*