BECK v. TUCKER.*

(Division A.   April 4, 1927.   Suggestion of Error Overruled April 18, 1927.)

[113 So. 209.   No. 26090.]

1. USURY. *Payment of maximum interest before due held not to constitute "usury" (Hemingway's Code, section 2076).*

Payment of maximum interest before it was due *held* not to constitute usury or violation of Hemingway's Code, section 2076, authorizing forfeiture of interest if more than six per cent, is exacted, since creditor is not obliged to receive repayment of a debt or interest thereon before maturity.

2. USURY. *Payments to recompense creditor for interest paid by him after extending due date held violation of law authorizing forfeiture of interest on exacting more than six per cent. (Hemingway's Code, section 2076).*

Payments by debtor of certain sums, in order to recompense creditor for greater rate of interest on sums borrowed by him after extending due date of debt, *held* to constitute a violation of Hemingway's Code, section 2076, authorizing forfeiture of interest in case of exaction of more than six per cent.

147 Miss.—26.

3. LIMITATION OF ACTIONS. *Borrower's suit against lender to recover usurious interest tolls statute.*

Bringing of suit to recover usurious interest against lender by borrower in good faith, with process issued in good faith, stops running of statute of limitations.

4. LIMITATION OF ACTIONS. *Three-year statute applies to suits to recover illegal or usurious interest (Hemingway's Code, sections 2076, 2463).*

Hemingway's Code, section 2463, requiring actions on unwritten contracts to be commenced within three years, applies in suit to recover illegal or usurious interest in violation of section 2076.

5. LIMITATION OF ACTIONS. *Cause of action to recover usurious or illegal interest does not accrue until payment of principal debt (Hemingway's Code, section 2076).*

Cause of action for recovery of usurious interest or interest in violation of Hemingway's Code, section 2076, does not accrue until payment of principal debt, since borrower as well as lender may credit interest forfeited on principal of debt until such principal has been paid or extinguished.

---

*Corpus Juris-Cyc. References: Limitation of Actions, 37CJ, p. 764, n. 26; p. 1052, n. 37; Payment, 30Cyc, p. 1185, n. 44; Usury, 39Cyc, p. 951, n. 96 New; p. 958, n. 35 New; p. 1035, n. 18; p. 1037, n. 37; On the question as to whether the taking of interest in advance at the highest legal rate is usurious, see annotation in 29 L. R. A. 761; L. R. A. 1915D, 1196; 27 R. C. L. 225; 4 R. C. L. Supp. 1746; 6 R. C. L. Supp. 1648.

APPEAL from chancery court of Madison county.

HON. V. J. STRICKER, Chancellor.

Suit by R. F. Beck against J. H. Tucker. Judgment of dismissal, and complainant appeals. Reversed and judgment rendered.

*E. B. Harrell,* for appellant.

The court erred in holding that the one hundred eighty-dollars unearned interest paid to Tucker for "shifting securities and taking a new note" was not a violation of the usury statute. A correct answer to this question will be found in section 2076, Hemingway's Code. Justice

COOPER has well defined the usury statute in *Bass* v. *Patterson*, 68 Miss. 312.

The court will bear in mind that all interest had been paid on the three thousand dollar note as it annually fell due. On February 18, 1920, the one thousand dollar note and the three thousand dollar note were merged into the four thousand dollar note and the security shifted from the "Luckett Place" to the "White Place." As a consideration for executing new papers, and shifting the security Tucker charged and collected one hundred eighty dollars of unearned interest as a premium or commission in making the change.

This was a scheme to get more interest than the law allows and at the same time place of record a contract that would disclose a transaction free from taxes. *Bank of Manchester* v. *Nolan*, 7 How. 508; *Bethlehem Finance Corporation* v. *Schuler*, 209 N. Y. S. 228; *Pope* v. *Marshal*, 78 Ga. 635; *Newman* v. *Williams*, 29 Miss. 222.

This was clearly a transaction by which Tucker was to receive more than the legal rate of interest and is fully within the prohibition of the statutes. *Bond* v. *Jones*, 8 S. & M. 368; *Rozell* v. *Dickerson*, 63 Miss. 538; *Levy & Sons* v. *Jeffors*, 105 So. 1; *Hiller* v. *Ellis*, 72 Miss. 709; *Polkinghorne* v. *Hendricks*, 61 Miss. 366; *Robers* v. *Rivers*, 135 Miss. 760.

*W. H.* and *R. H. Powell*, for appellee.

The gravamen of the bill in paragraph 5 is that Tucker collected on February 18, 1902, one hundred eighty dollars more than the interest. The answer, paragraph 5, fully explains that and shows that it is not true. Read it.

In paragraph 6 of the bill it is claimed that Beck gave his note April 13, 1921, for sixty dollars, which is claimed to be usurious, and note was paid October 17, 1921. But in the answer, paragraph 6, this is denied to be usurious and the facts are fully explained to show that there was no contract for usury, it being merely the difference be-

tween six and eight per cent and had nothing to do with the original loan, but simply a contract for reimbursement of what Tucker had to pay others.

By Hemingway's Code, section 2075, the legal rate of interest is six per cent. Eight per cent can be charged and is not usury. To constitute usury, there must be an agreement between lender and borrower by which the borrower knowingly promises and the lender knowingly takes a higher rate of interest than the law allows and with an intention to violate the statute. *Planters Bank* v. *Snodgrass,* 4 How. 573, especially pages 621-24 and 633. Amounts paid voluntarily and not as a condition of the loan are not usurious. *Ib.* 573, 631. Cited and approved in *Smythe* v. *Allen,* 67 Miss. 146, 150.

A person can be estopped from setting up usury as a defense. *Henderson* v. *Hartman,* 65 Miss. 466. Usury is determined by what the creditor has the right, according to the terms of the contract if enforced, to demand in any situation during its life, and not by what he may ask under an accidental situation. *Crofton* v. *New South Loan Ass'n,* 77 Miss. 166.

Beck does not charge in specific terms in his bill that Tucker intended to evade section 2076, for he knew that that was not a fact that he could prove; but suppose he had: That section must be read and construed to mean *at the time* that the loan was made. Such intention must exist. That section relates only to contract made at the time of the loan and not to any subsequent transaction during the life of the loan.

By section 1780, Hemingway's Code (section 2112, Code of 1906) it is provided that an executor or administrator may pay a debt which is not due and save the unearned interest, but there is no law compelling a creditor to accept payment from a live man before maturity of the debt and thereby lose the interest not earned.

If Beck had borrowed four thousand dollars at six per cent for one year and had given his note for four thousand two hundred and forty dollars and on the very

next day desired to repay the four thousand dollars and one day's interest only, he could not have compelled Tucker to accept the one day's interest.

If, therefore, Beck for his own convenience had paid the four thousand two hundred and forty dollars on the next day after the loan had been made and Tucker had accepted it, then certainly there would have been no element of usury in such a transaction.

*H. B. Greaves,* also, for appellee.

The following is the law governing usury:

(a) Interest collected in advance at the highest legal rate is usurious. See *Polkinghorne* v. *Hendricks,* 61 Miss. 365, which is cited and approved in 81 Miss. 306.; 82 Miss. 606; 108 Miss. 165; 100 Miss. 749; 95 So. 519; 100 So. 385. Payment of highest rate semiannually usurious. *Redgress* v. *Ribers,* 135 Miss. 756.

(b) A bonus charged by the lender to make a loan renders the contract usurious, if the bonus added to the interest charged exceeds the legal rate. *Levy & Sons* v. *Jeffords,* 105 So. 1.

(c) Ignorance of the law does not excuse anyone, and if a person knowingly receives more than eight per cent interest, even though he thought he had a right to it, the same renders the loan usurious.

(d) The charging and collection of the highest legal rate of interest for a whole year renders the whole loan usurious provided the loan does not run one year. *Hiller* v. *Ellis,* 72 Miss. 709.

(e) Under section 2076, Hemingway's Code (Acts of 1914, chapter 137) if appellee with a view of evading the six per cent interest law had taken appellant's note which showed the rate of interest to be six per cent, but had in fact "secretly" contracted for, directly or indirectly, a sum of money in excess of six per cent, all interest would be forfeited.

These loans were called in by Beck and not by Tucker. This transaction was in every respect legitimate. It is indulged in by the federal land banks and practically all building and loan associations and individuals and banks lending money in this state, and has been adjudged by this court to be legitimate. *Kornegan* v. *Loan Ass'n*, 91 Miss. 551, opinion 556, and authorities cited in opinion.

The chancellor found that this was legitimate and that there was no intention thereby to evade the state; and this finding is supported by the overwhelming preponderance of the evidence.

*E. B. Harrell*, for appellant, and *H. B. Greaves*, for appellee.

McGOWEN, J., delivered the opinion of the Court.

On July 1, 1916, Beck, the appellant, hereinafter called the "borrower," obtained a loan from Tucker, the appellee, hereinafter called the "lender," amounting to three thousand dollars, and executed his several notes for the principal and interest at six per centum per annum as follows: An interest note for sixty dollars due November 1, 1916; five interest notes for one hundred eighty dollars each, due, respectively, November 1, 1917, 1918, 1919, 1920, and 1921; and one principal note for three thousand dollars, due November 1, 1921.

The interest notes due up to January 31, 1919, were paid, and on that date the borrower secured an additional loan from the lender amounting to one thousand dollars, and executed his note for one thousand fifty-five dollars due January 1, 1920.

All of the above were secured by a deed of trust on borrower's plantation, known as the "Luckett Place."

In September, 1919, the borrower made a contract with Sweeney to sell the Luckett Place and to convey it to him free of liens. On February 18, 1920, the borrower applied to the lender to refinance his loan, and to have

canceled the deeds of trust on the Luckett Place, in order that he might carry out his contract with Sweeney; the borrower agreeing to execute a new trust deed on his plantation known as the "White Place" for the sum of four thousand dollars. This was agreed to by the lender, and the two deeds of trust held by him on the Luckett Place were canceled, and a new deed of trust, as of that date, executed on the White Place.

At the time the borrower sought the exchange of securities and the release of the security formerly held, the lender refused to make the change unless the borrower would agree to pay the interest note for one hundred eighty dollars, which fell due on November 1, 1920, and this was agreed to, as well as that the lender would forego payment by the borrower of the interest note that matured on November 1, 1921. This change appears to have been made at the solicitation, and for the benefit and accommodation of the borrower. On February 18, 1920, a new note was taken for four thousand two hundred forty dollars, due one year after date, on the due date of which note the borrower paid interest amounting to two hundred forty dollars, having before that time paid the one hundred eighty dollars interest note which was due November 1, 1920, and these two items were claimed to be usury by the borrower in a suit which we shall hereafter mention.

On February 18, 1921, the parties agreed· to extend the four thousand dollar principal note, which had not been paid, for one year. Very soon after this time, the lender complained to the borrower that he (the lender), on account of this loan, was under the necessity of borrowing sums of money from the bank, and that at the bank he had to pay eight per cent interest per annum. They went to the bank and ascertained the amount of loans made by said bank to the lender, after which they agreed that the borrower would make the lender whole in the matter of interest, and in April, 1921, Beck, the borrower, gave his note for sixty dollars, representing

two per cent interest on three thousand dollars, in order to make Tucker whole in the amount of interest he had to pay the 'bank. The note was made due in July, but was paid October 17, 1921. The borrower paid the lender two hundred forty dollars interest, which was not due until February 18, 1922. On February 16, 1922, no part of the principal four thousand dollars was paid, and same was extended, by agreement of the parties, until one year after this extension. The borrower thereafter gave to the lender a twenty-five dollar note to make the lender whole on interest paid by him to the bank. This note was paid October 10, 1922, and on November 1, 1922, the borrower paid the lender two hundred forty dollars interest, and the four thousand dollars principal which was not due until February 16, 1923.

On April 28, 1925, Beck filed his bill in the chancery court of Madison county, seeking to recover all interest paid to Tucker since February 16, 1920, alleging, in said bill, the various transactions detailed above, in substance, and asserting that under chapter 70, Code of 1906 (Hemingway's Code, chapter 37), Tucker had charged him an unlawful and usurious rate of interest, being in excess of the rate of eight per cent *per annum,* and praying that he be given a decree against the lender for all interest paid.

On the trial, it developed, as the above-stated facts show, that the rate of interest charged and received by the lender had not exceeded eight per cent, which is the maximum contract rate of interest under section 1, chapter 229, Laws of 1912, and complainant then contended that he was entitled to recover all interest under and by virtue of the terms of section 2076, Hemingway's Code, entitled, ''Evasions of six per cent interest law—Interest forfeited if higher rate secretly exacted,'' which section is as follows:

''If, after the passage of this act, any person shall lend to another any sum of money and take any note or evidence of debt which shall stipulate a rate of interest not

greater than six *per centum per annum,* after the date or
after maturity but who shall in fact contract for, charge,
collect or receive as compensation or consideration for,
or as the result of, such loan, directly or indirectly, a
sum of money in excess of six *per centum per annum*
from the date of the loan or a sum of money, taken with
the interest contracted for is in excess of six *per centum
per annum* from the date of the loan, such person shall
forfeit all interest, and if the interest shall have been
paid, same may be recovered by suit.''

The chancellor, in a written opinion, held that there
was no agreement between the parties for an amount in
excess of six per cent at the time the loans in this case
were made, or when the security was transferred, or when
the extensions were agreed to, and that the extra pay-
ments of eighty dollars and twenty-five dollars were not
contemplated by the parties in the original 'contract,
and that, in his opinion, an agreement for a greater rate
of interest than six per cent must have been contempo-
raneous with the making of the contract, and dismissed
the bill.

As to the items of the one hundred eighty dollar note
and the two hundred forty dollars paid in advance, and
the payment of the interest at other times in advance, we
agree with the chancellor that this did not constitute
usury or a violation of the six per cent statute, which is
here applicable, because it is clear that the creditor is
not obliged to receive repayment of a debt or interest
thereon before maturity. 26 Encyc. of Law, 483; *Korne-
gay* v. *Loan Ass'n,* 91 Miss. 551, 44 So. 783.

But we cannot agree with the chancellor in his finding
that the payments of sixty dollars and twenty-five dol-
lars, respectively, in the years 1921 and 1922, do not
violate the six per cent statute.

We think, if that statute was construed to mean that
the agreement for six per cent interest secretly made
and not shown in the contract must be contemporaneous
with the making of the original contract, or then be in

the minds of the parties, this would defeat the manifest purpose of the statute. The legislature not only intended to protect the borrowers from usury, but intended that the parties should, in making the contract, state the truth, and the whole truth. Under our statutes, in force at the time this statute was enacted, money loaned at a rate of interest not exceeding six per cent *per annum* was exempted from taxation, and it is very evident that the legislature intended to encourage this character of loans, and prohibit the making of secret contracts by which the tax laws of the state could be easily evaded.

We cannot take the narrow restricted view of the statute invoked by the chancellor in his decision in this case. We think in the year 1921, the lender collected sixty dollars more than six per cent interest *per annum,* and the fact that it was paid voluntarily only intensifies, rather than obviates, the rigor of the statute. The parties contracted for a higher rate of interest than six per cent. The purpose of the contract so to do has nothing to do with it. It was a violation of the statute, as was the payment of twenty-five dollars in addition to the sixty dollars interest for the year 1922, and, in view of the fact that the statute forfeits all interest in such cases, these interest payments work a forfeiture of all interest paid by the borrower to the lender during those years. In this case there was clearly an extension of the due date of the note, and the interest is to be forfeited from the date of the extension next preceding the collection of the unlawful amount of interest. That would mean that all interest paid in 1921 and 1922 would be recoverable by the borrower from the lender.

Counsel for defendant, the lender, insists that the statute of limitations applies, and that more than three years had intervened between the date of payment of interest and date of the judgment in the court below. The bringing of a suit against the lender, by the borrower, in good faith, with process issued in good faith, stops the running of the statute of limitations.

The question then presented is, When did the cause of action accrue to the borrower in this case? Was it the date of the payment of the extra interest, or the date of payment of all interest, on the due date of the note, or was it the date of final settlement? ·

In *Buntyn* v. *Building & Loan Association*, 86 Miss. 454, 38 So. 345, this court held that:

"An obligation to repay interest collected upon an usurious agreement . . . is in its nature an implied contract, and a suit thereon will be barred by limitation unless brought within three years next after the cause of action accrued: . . . Code 1892, section 2739, providing that actions on unwritten contracts, express or implied, shall be commenced within three years."

Section 2739, Code of 1892, is brought forward in the Code of 1906 as section 3099, and in Hemingway's Code as section 2463. So it is settled in Mississippi that the three-year statute of limitations applies in suits to recover illegal or usurious interest in violation of the six per cent statute.

Applying the three-year statute of limitations, to the items sued on this case, the interest paid in 1921 could not be recovered if the cause of action accrued on the date of payment, which was more than three years prior to the bringing of this suit.

We deem it unnecessary to review the authorities outside our own state. There is ample authority on the outside, and many well-reasoned cases holding that the cause of action accrues on the date of payment, and that usurious interest may be recovered without regard to whether the principal debt shall have been paid by the debtor or not, but our state has aligned itself with those authorities which hold that, so long as the principal debt remains unpaid, the borrower, as well as the lender, has a right to credit the interest forfeited on the principal of the debt until said principal has been paid or extinguished.

Since the decision in *Bank* v. *Auze,* 74 Miss. 609, 21 So. 754, our court has consistently held that, before a suit for

usurious interest can be maintained, the borrower must pay or extinguish the principal debt due the lender, and any and all usurious payments will be applied to such debt until it is satisfied. It was further held in that case that the suit was not for the recovery of a penalty, *eo nomine,* and was not barred by the statute of limitations as to a penalty.

Notwithstanding the number of decisions *contra* in other jurisdictions, we are content to continue to follow the manifestly just and equitable rule above laid down.

The cause of action in this cause did not accrue until the final settlement on November 1, 1922, and then, for the first time, the cause of action accrued to the borrower.

In this cause, it follows from the above statements that Beck is entitled to recover from Tucker sixty dollars paid on October 17, 1921, two hundred forty dollars paid on December 27, 1921, twenty-five dollars paid on October 10, 1922, and two hundred forty dollars paid on November 1, 1922, together with six per cent *per annum* thereon from November 1, 1922, when this cause of action accrued.

The judgment of the court below will be reversed, and judgment will be entered here accordingly.

*Reversed, and judgment here for appellant.*